# THE SUPREME COURT

83    15
130   69
130  358

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1876.

## Collins *et al. versus* Barnes.

B. contracted with a railroad company to build its road, and sublet certain sections of the road to C. & Co., the work to be paid for according to the estimates of the division engineer. After the work was completed by C. & Co., B. refused to pay the balance claimed by C. & Co., on the ground that the engineer's estimates showed that they had been paid in full for all their work. C. & Co. then sued B. in Connecticut, to recover what was due them on the contract, but afterwards suspended that action under an agreement with B., by which he agreed to prosecute an action against the railroad company, with the assistance of C. & Co., and pay them all that he recovered on their sections. B. recovered a large sum from the company, but still refused to pay C. & Co., on the ground that they were already overpaid, and that he had recovered nothing on their sections; C. & Co. then brought this action. The court below refused to submit the evidence of the new contract to the jury and to charge that the plaintiffs were entitled to recover from B. whatever he recovered from the company on the plaintiffs' sections, and directed a verdict for the defendant. *Held*, to be error.

October 3d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1875, No. 250.

Covenant (afterwards changed to debt) by P. F. Collins and J. M. Moorehead, trading as Collins & Co., against O. W. Barnes. The material facts were these : The defendant in 1869 entered into a contract with the Connecticut Western Railroad Company to build their road. He afterwards sublet the building of mile sections, from 18 to 24, inclusive, to the plaintiffs. The contract between the plaintiffs and the defendant was the same precisely as that between the defendant and the railroad company. It was agreed between them that monthly estimates of the work should be made by the

(15)

[Collins *v.* Barnes.]

division engineer, and upon these being certified by the chief engineer, eighty-five per cent. of their amount should be paid to the plaintiffs.   The remaining fifteen per cent. was to be retained till the completion of the work.   The contract further provided that the decision of the chief engineer should be final and conclusive in any dispute which might arise between the parties to the agreement. Monthly estimates were furnished to Collins & Co., and payments made on them under the contract till December 1870, when a new division engineer revised the estimates of his predecessor, and cut them down by changing the classification of the work.   This brought Collins & Co. in debt to Barnes.   After this no more monthly estimates were furnished to the plaintiffs.   Barnes, however, told the plaintiffs to go on with their work and finish it, and that the company had no right to change the estimates, but would be bound by the first estimates.   Barnes further assured them that he would not submit to the change, but would aid the plaintiffs in inducing the chief engineer to replace the first estimates.   The plaintiffs applied to the chief engineer, but he told them he had nothing to do with them, as the company had contracted with Barnes, and they must look to him.   The plaintiffs went on with their work until February, when their property was attached for a debt.   Barnes then suggested that the plaintiffs should unite with him in getting one O'Hara to finish the work for their benefit, and this was done. After the completion of the contract, Barnes refused to make a settlement, on the ground that the first estimates had never been put back, and as things then stood the plaintiffs were indebted to him.   Collins & Co. then began suit against Barnes by attachment against the railroad company in Connecticut; whereupon Barnes came to them and told them he had refused to be bound by the chief engineer's estimates, and had brought suit in New York against the company to recover, among other things, for the amount due on the work on the plaintiffs' sections.   It was then agreed between them that Collins & Co. should procure the necessary witnesses in the suit in New York to prove the amount of work done on their sections, and that Barnes, upon a settlement with the railroad company, should pay Collins & Co. the amount received for the work done by them.   The attachment in Connecticut was allowed to rest.   Collins & Co. assisted Barnes in his action in New York, in which Barnes sought to recover over $38,000 for work done on the plaintiffs' sections.   On this point the evidence was contradictory, Barnes testifying that he had not recovered anything on the plaintiffs' sections.   Barnes settled his case and received a large sum from the railroad company.   He then refused to come to a settlement with Collins & Co., and this action was brought.

The original *narr.* was in covenant; at the trial a *narr.* in debt was filed, and the plaintiffs, in addition to a large mass of testimony as to their performance of the old contract and the

[Collins *v.* Barnes.]:

above matters, gave evidence tending to show, that after the making of the contract it was agreed between the parties to waive that clause in it which made the chief engineer's decision in all disputes final, and also that the chief engineer refused to act in the matter ; also, to show that Barnes agreed with the plaintiffs that if they would stop their proceedings in Connecticut, and help him in his suit in New York against the railroad company, he would pay them all he recovered from the company for the work done on their sections.

The plaintiffs asked the court to charge as follows: "If the jury should believe that, after the work was all done, plaintiffs and defendant agreed that if plaintiffs would not prosecute their action, then pending in Connecticut against the defendant, and would aid him (defendant) in his suit, then pending against the railroad company, and would assist him in proving the work done on plaintiffs' sections, he, the defendant, would give them, the plaintiffs, such sum as he should receive from the said railroad company on account of plaintiffs' sections, and that the plaintiffs performed their part of the said agreement, then the plaintiffs are entitled to recover from the defendant what he (defendant) received from the railroad company on account of the said sections of plaintiffs."

The court (Kirkpatrick, J.,) refused so to charge, and directed a verdict for the defendant.

After verdict and judgment for the defendant, the plaintiffs below took this writ of error. The material assignments of error were to the charge of the court and the answer to the above point.

*Hampton & Dalzell* and *D. T. Watson,* for the plaintiffs in error.—The plaintiffs' point raised a question of fact as to whether Barnes recovered anything on the plaintiffs' sections, and this ought to have gone to a jury.

*Hill Burgwin,* for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, November 13th 1876.

By the contract of December 15th 1869, Barnes agreed to pay to Collins and Moorehead, on the monthly estimates of the engineers of the railroad company, eighty-five per cent. of the value of the work to be by them done, and when all said work was fully completed, "agreeably to the specification, and in accordance with the directions and to the satisfaction and acceptance of the chief engineer of the Connecticut Western Railroad Company," there was to be "a final estimate made of the quantity, character and value of said work," agreeably to the terms of said agreement, and then, and not until then, Barnes became liable to pay the plaintiffs the balance which might appear from such final estimate to be due.

2 NORRIS—2

Now, under this contract, what the division engineers have done is of no consequence, for their estimates governed only as to the partial payments, but when Collins and Moorehead came to demand final payment, the reserved fifteen per cent., or whatever may have been due upon the contract, they were obliged to produce the final estimate of the engineer-in-chief, for that alone could show that the work had been approved and accepted by him, and without this no action would lie against Barnes. This was the law the parties adopted for themselves, and they must be governed by it. It was but reasonable that it should be so, for Barnes was but a contractor; he was himself governed by the same rule, and if the estimates fell short of the expectations of Collins and Moorehead, Barnes could not help it; he lost as well as they, and they could not expect him to pay what he could not get. Both parties were in the same venture, and its failure was a mutual disaster to be borne equally, and so the contract intended. In like manner, the testimony of Collins about his application to Mr. Schunk, the chief engineer, for estimates in order to settle an alleged dispute between himself and Barnes, amounts to nothing, for he had those estimates as made for the company and its contractors, and it was not Schunk's business to revise his work upon the call of a sub-contractor. And what was the dispute between himself and Barnes which required the intervention of an arbiter? They were in perfect accord concerning the estimates, for, if we are to believe Collins's own testimony, Barnes found as much fault with the estimates as he did; in the condemnation of the work of the engineer they agreed. The dispute, if such it may be called, was one which no arbiter was needed to settle, for Collins wanted Barnes to pay him for that which, under the contract, he had no right to demand; to pay him for work which the final estimate showed he had not done. It is manifest, therefore, that that part of the agreement which constitutes the chief engineer an arbiter to settle any disputes that might arise between the parties touching the stipulations therein contained, has no place in this controversy. If, however, Collins is to be believed, there was a subsequent arrangement by which the plaintiffs were to receive a pro rata share of what Barnes might recover from the company in a suit then pending against it. The design of this suit was to compel the company to account for work over and above that estimated by the engineer, and to test the question whether that estimate was conclusive on the contractors, or not. It was, indeed, but common justice, that if the defendant recovered from the railroad company for work done by the plaintiffs, they should receive their fair proportion of what that company might be compelled to pay. Independently of this, however, Collins says, that in consideration of this promise from Barnes, they agreed to suspend an action which they had commenced against him, and to assist, as far as they were able, in the suit against the company;

[Collins v. Barnes.]

all of which he alleges they did do. If these statements be facts, and it be also true that Barnes compromised with the company and received money or other valuables, we cannot see why he should not be compelled to account to the plaintiffs for a proper share of what was received on account of their sections of the work. Furthermore, if, as Collins testifies, Barnes undertook to see that they were paid what was justly due to them, and agreed to conduct the suit for their mutual benefit, he, in good faith, was bound so to do, and he would be responsible for any fraud or negligence in the prosecution of the suit, or in the compromise by which it was terminated. These were matters that ought to have been submitted to the jury, and the court erred in refusing so to submit them.

The judgment is reversed, and *venire facias de novo* awarded.